## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THADDEUS JONES,          )
                                 )
                   Plaintiff,   )
                                 )
v.                                 )     Case No.: 17-3089-EFM-KGG
                                 )
JEFF EASTER, *et al.*,        )
                                 )
                  Defendants. )
_____)

## MEMORANDUM & ORDER ON
## MOTION TO COMPEL COMPLIANCE WITH
## COURT'S PREVIOUS ORDER COMPELLING DISCOVERY

Now before the Court is Plaintiff's "Motion to Compel Compliance with Court's Previous Order Compelling Discovery and Renewed Request for Sanctions and Clarification" filed *pro se*. (Doc. 60.) Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED in part, DENIED in part,** and **taken under advisement in part**. The Court also **DENIES** Defendant's Motion to Strike Plaintiff's motion. (Docs. 61, 62.)

## FACTUAL BACKGROUND

Plaintiff Thaddeus Jones brings civil rights claims, *pro se*, seeking monetary damages and punitive damages against the named Defendants as a result of injuries he alleges he sustained while being held as a pretrial detainee at the Sedgwick

County Detention Facility in Wichita, Kansas ("SCDF"). (*See* Doc. 1.) Plaintiff

alleges that when he returned to his cell after breakfast on March 6, 2017, his

> cell door was closed and secured. Five minutes later,
> another inmate walked up to Plaintiff's cell door and
> Defendant Officer Melendez, after just letting Plaintiff
> into the cell, let the other prisoner into Plaintiff's cell.
> Plaintiff alleges that Officer Melendez had just witnessed
> Plaintiff violently shoving the other prisoner because he
> had stepped in front of Plaintiff in the breakfast line.
> After entering Plaintiff's cell, the prisoner assaulted
> Plaintiff and Plaintiff received injuries, including a
> laceration requiring sutures, which were photographed
> and treated. Plaintiff alleges the incident was foreseeable
> and no reasonable person would let a second prisoner
> into a single-person cell. Plaintiff alleges that his cell is
> located in an 'aggravated pod' which calls for heightened
> awareness and security. Plaintiff alleges that the SCDC
> and Officer Melendez had a duty of care to protect
> Plaintiff from foreseeable harm by another inmate.

(Doc. 5, at 1-2.) Defendants generally deny Plaintiff's allegations.

The underlying discovery requests were mailed by Plaintiff to counsel for

Defendant Jeff Easter ("Defendant" or "Defendant Easter") on September 26,

2018, making responses due on or before October 29, 2018. (Doc. 44, at 1.)

Defendant's responses were hand-delivered on November 9, 2018, some 12 days

late. (*Id.*, at 2.) Defendant does not dispute this. (Doc. 45, at 4.) Defendant did

not file a motion requesting an extension of time from the Court to respond to

Plaintiff's discovery requests.

In its initial Order regarding these discovery requests, the Court held that Defendant's stated reasoning for failing to provide timely answers does not excuse the failure to comply by the clear language of the Federal and Local Rules. (Doc. 49-1, at 4 (citing Fed.R.Civ.P. 33(b)).) The Court indicated that even if Defendant had good cause for failing to respond to Plaintiff's discovery requests in a timely manner, Defendant failed to provide <u>any</u> cause for choosing not to file a motion to extend the deadline to do so. (*Id*., at 6.) The Court continued that "Defendant was not free to merely ignore the deadline, ignore the Federal and Local Rules, and file his discovery responses when it was convenient for him." (*Id*.) Ultimately, the Court found that "Defendant's responses were served in an untimely manner, Defendant made no attempt to ask the Court for an extension of time to respond, and, by Defendant's own statements, this was done intentionally or in complete disregard of the relevant Federal and Local Rules," which the Court found Defendant treated "with complete indifference." (*Id*., at 7.)

The Court thus granted Plaintiff's motion to Compel (Doc. 44) and held that Defendant's objections were waived. (Doc. 49-1, at 7.) Defendant was ordered to provide "complete and supplemental discovery responses," that were "without objection," by March 4, 2019. (*Id*.) Defendant was "specifically instructed to refrain from providing Plaintiff with evasive responses" and told not to include improper language such as "I did not prepare this document … but it appears to

be" and "[w]hile I did not prepare or review this report prior to responding to this question, it appears to be consistent…" (*Id*.)  Defendant was specifically ordered to provide "direct answers that reflect information not only known to him, but to which he has access." (*Id*.)

Supplemental responses were provided by Defendant on March 1, 2019. (Doc. 54; *see also* Doc. 60, at 9-15 and Doc. 61, at 13-19.)  Plaintiff brings the present motion arguing that numerous of Defendant's supplemental responses were "evasive and incomplete," "unacceptable," and "willfully disobediant" [sic].[1] (Doc. 60, at 2.)

Defendant responds that Plaintiff's motion should be stricken because Plaintiff did not comply with Fed.R.Civ.P. 37(a)(1) "in that he did not offer any meaningful opportunity to respond to his [golden rule] letter…" (Doc. 61, at 4.) The Court finds that while Plaintiff's pre-motion attempts to confer were not ideal, they were not so blatantly insufficient as to justify striking Plaintiff's motion, as Defendant requests.[2]  Defendant's Motion to Strike (Doc. 61, 62) is thus **DENIED**.

---

[1]  Plaintiff's motion relates only to Defendant's supplemental responses to Interrogatories Nos. 2, 4, 6, 7, 9, 17, 20, and 21.  Defendant's response inexplicably addresses all supplemental responses, including Interrogatories Nos. Interrogatories Nos. 10, 14-16, 18, 19, 22, and 23, which were not contained in Plaintiff's motion.  As such, the Court will disregard any discussion of Interrogatories Nos. 10, 14-16, 18, 19, 22, and 23.

[2] The Court finds Defendants' position somewhat ironic considering their argument in response to the underlying motion to compel, wherein they argued that conferring with Plaintiff should be excused entirely because it would likely be "futile."  (Doc. 45, at 4.)

Defendant did, however, provide a response to Plaintiff's arguments "[i]n the event the Court desires to address the merits" of Plaintiff's motion. The court does so desire and analysis will now turn to the substance of Plaintiff's motion and the Interrogatories at issue.

## ANALYSIS

### I. Discovery Requests at Issue.

### A. Interrogatory No. 2.

This Interrogatory asks if Plaintiff and inmate Danny Williams "were identified by watch command as the two individuals in a fight in Pod #5 Section 'A,' on March 6th, 2017, and the method used to make that determination?" (Doc. 61, at 13.) Defendant responded

> While I didn't see the supposed altercation in question, Deputy Paredes has indicated that he saw inmate Thaddeus Jones jump to the head of the chow line on the morning of March 6, 2017, pushing past other inmates. It did not appear that there was an 'altercation.' Only later in the morning, during First Shift, did inmate Jones claim that there was an altercation, and that was looked into by other Deputies, and a report was filed. No formal investigation of a crime occurred, because Jones and Williams stated that they did not want a prosecution.

(*Id*., at 14.)

Plaintiff objects that the language "[w]hile I did not see the supposed altercation in question" is "prohibited language only deliberately phrased in different words." (Doc. 60, at 4.) Plaintiff continues that the response is "evasive"

and "untruthful."  While Defendant's response includes superfluous, qualifying

language, Defendant has answered Plaintiff's underlying inquiry as to who was

involved in the "fight" and how that determination was made.  Plaintiff's

objections are overruled and this portion of his motion is **DENIED**.

Plaintiff asks, however, that if a report was filed (as stated in Defendant's

response), such report be produced to him.  (*Id.*)  In the interests of judicial

economy, the **GRANTS** this portion of Plaintiff's motion and Orders Defendant to

produce any such report to Plaintiff within thirty (30) days of the date of this

Order.  If the report has previously been produced, Defendant is instructed to

identify the document by Bates number and date of production.

### B.  Interrogatory No. 4.

Interrogatory No. 4 asks for the facts that "the supervisor rel[ied] upon to

make this determination that there was no violation of policy or procedure on the

part of sheriff s employees, and no secondary related incidents[.]"  (Doc. 61, at 14.)

Defendant qualifies his response by stating that he "did not make this

determination."  (*Id.*)  Defendant continued, however, that

> [d]uring the investigation process, detectives would
> review any videos or reports and conduct interviews.  In
> the event there is a question as to a possible policy
> violation, the question would be referred to a supervisor
> to determine whether an investigation into the policy
> violation should be conducted.  However, here, I do not
> believe this was investigated to determine if there was a
> violation of policy or procedure because it was a simple

> battery, inmate fight, and since Inmate Jones and Inmate
> Williams both stated they did not want to pursue charges,
> nothing went further than that. I know that the notes of
> the Detectives have already been produced to Jones, and
> between the findings found in the contents of those notes
> and his statement that he didn't want to prosecute, there
> was no formal investigation.

(*Id*.)

Plaintiff argues that the "I did not make this determination" language is "prohibited" by the Court's prior Order, as well as "evasive and non-responsive" because the Interrogatory "asked what facts did the supervisor rely upon to determine there was not policy violation[.]" (Doc. 60, at 5.) The Court agrees that Defendant's response is riddled with improper qualifying language such as "I did not make this determination," "detectives would review," "[i]n the event," "the question would be referred," and "I do not believe this was investigated…"

The Court understands that Defendant did not make this determination himself (although it is unclear from the response whether Defendant is stating that no such determination was made). The Interrogatory does not, however, ask if Defendant made this determination. Further, the Interrogatory does not ask Defendant what "would" happen, what he thinks occurred, or why he "believes" decisions were made. Rather, the Interrogatory asks Defendant for specific facts relied on by supervisory personnel to determine that there was no violation of policy or procedure by sheriff's employees <u>in this instance</u>.

As stated in the Court's prior Order, "Defendant is instructed to provide **direct answers that reflect information not only known to him, but to which he has access**." (Doc. 49-1, at 7 (emphasis added).) Plaintiff's motion is **GRANTED** as to Interrogatory No. 4. Defendant is instructed to supply Plaintiff with a <u>direct</u> supplemental response within thirty (30) days of the date of this Order that eliminates all qualifying language contained in his response to Interrogatory No. 4 and provides a recitation of <u>specific facts</u> relied upon by supervisory personnel to determine that there was no violation of policy or procedure by sheriff's employees and no secondary related incidents.

## C.     Interrogatory No. 6.

Interrogatory No. 6 asks Defendant to "state in detail, why there was not camera footage taken from both cameras, the 'Right' and the 'Left,' located in the Day Room of Pod #5 Section (A) of March 6th, 2017[,] incident and provided on the flash drive designated appendix #No. 5 to the court and Plaintiff[.]" (Doc. 61, at 14.) Defendant responded that "[w]hile [he] did not participate in the recording, preservation, or production of surveillance footage, [he has] have undertaken steps to find out what happened on the morning of March 6, 2017[,] in order to answer this question." (*Id*.) Again, the Court surmised that Defendant was not directly related in this process. This qualifying language is unnecessary and counter to the Court's prior Order.

Defendant continued that

> [i]n the past, we looked into this issue on the request of the County Counselor, and determined that video pulled by Detective Bloesing as part of the possible criminal case was given to the attorneys to give to Inmate Jones and the Court. When no criminal prosecution was requested by Inmate Jones or Inmate Williams, other footage was later disposed of per policy, as there wasn't any claim pending at that time. In order to answer the question specific to this camera in this question, which is #271, I have asked Deputies why there's footage from the booth and another camera, but not from #271. Apparently, there wasn't any footage from that camera, because it wasn't recording at the time, but footage from the booth camera and the other camera was saved as part of the criminal case. This is new information I didn't have before and only just discovered in the last couple of days, and all I knew before was that we had no additional footage other than what was given to Inmate Jones and the Court. I've asked for information from our vendor, Stanley, as to how long this camera wasn't recording, but I haven't gotten those answers back yet, and will supplement this answer when I get the response back. Along with this answer, I have attached an email exchange with Joe Simmons and Brent Carlson asking about these matters.

(*Id.*)

Plaintiff asks for an Order requiring Defendant to "clarify this response as it is ambiguous to the facts at what point was it known that camera #271 was not recording." (*Id.*, at 7.) The Interrogatory, as worded, asks "why there was not camera footage taken…" (Doc. 61, at 14.) Defendant has responded merely that the camera "wasn't recording at the time…" (*Id.*) This is not a response to

Plaintiff's inquiry. Defendant has failed to answer the baseline, unambiguous question of <u>why</u> the camera was not recording footage at the time. Plaintiff's motion is **GRANTED**. Defendant is instructed to supply Plaintiff with a direct supplemental response within thirty (30) days of the date of this Order that eliminates all qualifying language contained in his response to Interrogatory No. 6 and provides a recitation of specific facts as to why the camera in question was not recording footage.

The Court appreciates that Defendant has "asked for information" from the vendor. That stated, the Court wants to ensure that Defendant do more than request the information from a third party and sit back and wait for a response. Defendant is instructed to actively pursue the information from the vendor. Defendant has thirty (30) days from the date of this Order to receive this information from the vendor and provide it to Plaintiff. If the information is not forthcoming from the vendor, Defendant is instructed to provide Plaintiff and the Court with a detailed description of the steps taken to retrieve the information and the vendor's response(s) thereto.[3]

Further, Defendant has provided no explanation, however, as to why this "new" information has just now been discovered and/or why this information was

---

[3] The Court denies Plaintiff's request for a response "directly" from third-party vendor Stanley Security "as to when and how long the camera was not recording. Plaintiff is not authorized to serve Interrogatories on a third party. *See* Fed.R.Civ.P. 33.

previously unavailable.  The Court anticipates that even the most cursory investigation would have included a determination that the camera in question was not recording at the time – as well as a follow-up determination as to why it was not.  This is especially true when, as stated by Plaintiff, "[t]his camera footage has been at the center of perhaps every other pleading in this case …"  (Doc. 60, at 6.)  Further, Plaintiff contends that Defendant knew that the camera was supposedly malfunctioning on the day in question at the time of the Martinez report in 2017.  (*Id*., at 6-7.)  Plaintiff asserts that if defendant Easter's response to this Interrogatory is true "then he was negligent in his obligation of discovery request, and counsel for defendants has violated certification requirements of 26(g), reasonable inquiry and assessment of the truth of the response …"  (*Id*.)  Defendant is Ordered to supplement his response to Interrogatory No. 6 within thirty (30) days of the date of this Order, answering the question and explaining why these inquiries were not made sooner.

### D.     Interrogatory No. 7.

This Interrogatory asks Defendant to "[s]tate the full name of the person and ID No.# (if applicable), and the title, or position of employment, of the person who recorded the camera footage of the March 6th, 2017 incident, designated as appendix No#5 for legal use[.]"  (Doc. 60, at 11.)  Defendant responds, "I did not record the footage."  (*Id.*)  Again, this information as superfluous as the

Interrogatory did not ask Defendant if he recorded the footage. Further, this qualification violates the Court's previous Order.

The response continues that

> [f]ollowing a review, the best determination that can be made is that the video was produced at the time when Assistant County Counselor Michael North filed the Martinez report. This would have been produced by the case detective, Detective George Jared Bloesing (goes by Jared), D1573 with the entirety of the case file. See also the response and supporting email to Interrogatory #6, where it seems that either Corporal Joe Simmons, D1296, or Corporal Brent Carlson, Dl 868, with my office uploaded that video from the criminal case onto the X Drive.

(*Id.*) Plaintiff objects that the response contains "prohibited language" that is "evasive and ambiguous." (Doc. 60, at 7.) Plaintiff complains that the response "is not one what identifies who actually recorded the footage." (*Id.*) The Court agrees.

Defendant's response is again riddled with improper qualifying language – "the best determination that can be made," "[t]his would have been produced by the case detective," "where it seems that…" Such language is improper and in blatant contravention of the Court's prior order requiring Defendant "to provide <u>direct answers</u> that reflect information not only known to him, but to which he has access." (Doc. 49-1, at 7.) The Court **GRANTS** Plaintiff's motion as to Interrogatory No. 7. Defendant is instructed to supply Plaintiff with a <u>direct</u>

supplemental response within thirty (30) days of the date of this Order that eliminates all qualifying language contained in his response to Interrogatory No. 4 and provides a recitation of <u>specific facts</u> responsive to Interrogatory No. 7.

    **E.    Interrogatory No. 9.**

Interrogatory No. 9 asks Defendant to "[s]tate the actual date the 'remaining footage,' and footage from the dayroom cameras in Pod No#5 was actually deleted and by whom[.]" (Doc. 60, at 11.) Defendant responds that

> [w]hen footage is disposed of per the policies of the SCADF, there isn't really a record as to a specific person deleting specific footage at a particular time. In this case, Inmate Jones and Inmate Williams said they didn't want to prosecute, so the investigation didn't go any farther than pulling video as part of a possible criminal case (which was probably done before we were told they didn't want to prosecute). Looking back at the records, it doesn't appear that Inmate Jones made any claim on this incident until after 90 days of the events, so footage was disposed of in accordance with our policy.

(*Id.*)

Plaintiff objects that the response is evasive "as deletion is obviously a process either by someone designated or computer function. In either case it bears a date of deletion, as detective Bloesing's report includes a date when unrelated footage was deleted." (*Id.*, at 7.) Plaintiff has asked when and by whom the footage was deleted.

Defendant has responded that per the policies of the detention facility, there "isn't really a record as to a specific person deleting specific footage at a particular time." (Doc. 60, at 11.) The Court is unsure what Defendant means by there "isn't really" a record of when and by whom. This would be the very definition of an evasive and ambiguous answer. Either there is a record of this information or there is not. Defendant is instructed to supplement its response to Interrogatory No. 9 accordingly within thirty (30) days of the date of this Order.

**F.      Interrogatory No. 17.**

Interrogatory No. 17 states that "[t]he daily activity log attached as exhibit No#3, records that seargent [sic] Torres Dl800, is in the Pod at 7:53 A.M. taking photos of the incident that occurred on third watch." (Doc. 60, at 12." The Interrogatory then asks Defendant to "[p]lease state in detail, what she was taking photos of, and for what purpose, on 3/6/2017[.]" (*Id*.) Defendant responds that Sgt. Torres

> documents evidence for the criminal case, and makes an incident report. She would also have provided evidence of an investigation if either Inmate Jones or Inmate Williams would have indicated a desire to prosecute, which they did not. Sergeant Torres would be the proper person to answer questions about what she was photographing and why, but her report would seem to speak for itself, and that has previously been produced.

(Doc. 60, at 13.)

Plaintiff argues that Defendant "is responsible for providing information available to him, and certainly [Sgt. Torres] is available to him." (*Id*., at 8.) Defendant responds that he "generally describes" that Sgt. Torres was "documenting information when she was taking pictures, refers the Plaintiff to the reports produced in conjunction with prior discovery responses, and further indicates that additional information may, but not necessarily is, available from the Detective who actually took the pictures." (*Id*., at 13.) Defendant continues that he "has not attempted to hide anything from the Plaintiff, but this Answering Defendant is not going to speculate as to the constellation of information sought by Inmate Jones, and is not required or qualified to provide him litigation advice or assistance." (Doc. 61, at 7.) Based on the directives of the Court's prior Order (Doc. 49-1), Defendant's response is clearly misguided.

As stated numerous times herein, the Court's prior Order specifically "instructed [Defendant] to provide direct answers that reflect **information not only known to him, but to which he has access**." (*Id.*, at 7 (emphasis added).) This language is unequivocal and unambiguous. Defendant's response is in blatant disregard of this Order. Plaintiff is not asking Defendant to "speculate" as to the information known by Sgt. Torres. Plaintiff is asking simply Defendant to get this information from Sgt. Torres and respond accordingly. Further, this is exactly what the Court's prior Order instructed Defendant he was required to do. As such,

Plaintiff's motion is **GRANTED** as to Interrogatory No. 17. Defendant is

instructed to supplement its response to Interrogatory No. 17 accordingly within

thirty (30) days of the date of this Order.

### G. Interrogatory No. 20.

Interrogatory No. 20 asks Defendant to "[p]lease attest to the truth and

veracity of the following: in appendix No#5, the flash drive submitted to the court,

is the Plaintiff Thaddeus Jones seen entering my cell 'alone,' and closing

the door, on 3/6/2017[.]" (Doc. 60, at 13.) Defendant responded that

> [i]t appears Plaintiff can be seen entering his cell alone
> and closes the door, based on what can be seen on the
> video from the security booth, but just because the door
> appears to be closed, that doesn't mean that it's locked.
> There was no lockdown reflected in the records from that
> morning, so the door wouldn't necessarily be locked.

(*Id.*, at 13.)

Plaintiff argues that the language "it appears Plaintiff can be seen" is

prohibited by the Court's prior directive. (*Id.*, at 8.) Plaintiff also argues that

Defendant's inclusion of "just because the door appears to be closed, that doesn't

mean that it's locked" is evasive and ambiguous. (*Id.*) Defendant responds that he

"is relating his understanding of the events based on his review of records and

discussion with those present. Merely because Plaintiff does not like an answer

does not make it insufficient." (Doc. 61, at 8.) The Court agrees with Defendant

that the answer is not "insufficient." While the response includes information that

goes beyond what Plaintiff has asked, Defendant has responded to the question

posed.  Plaintiff's motion is **DENIED** as to Interrogatory No. 20.

> **H.      Interrogatory No. 21.**

This Interrogatory asks Defendant to

> [s]tate or explain, through contention or opinion, the
> following: at 6:58A.M. the camera footage of appendix
> No#5, stopped.  Deputy Santana logged that she
> performed head count at 7:00 A.M., and all was normal.
> Explain how inmate Danny Williams could enter my cell
> in a physical altercation and not be filmed by two
> different cameras, nor 'seen' by three different officers?

(Doc. 60, at 8.)  Defendant objects that this Interrogatory "doesn't make any sense,

because it's causing me to have to guess at why somebody didn't see something."

(*Id*.)  Defendant continues that

> [w]e produced the footage from the cameras that we had,
> and like I said in the response to Interrogatory #6, I didn't
> find out until the last few days before writing these answers
> that camera #271 apparently wasn't recording at the time.
> What's more, Deputy Paredes was in charge of setting up,
> serving, and cleaning up the Chow Line, and Deputy
> Gutierrez was his backup that morning.  Apparently the
> food was late, so everyone was in a rush, and that's why the
> inmates were told to eat in their cells.  Based on what can
> be seen on the footage of happening around the cells, which
> we've already produced, it seems like two inmates entered
> 504A, and then it seems like there was a lookout posted to
> see what happened with the Pod Deputy, and that inmate
> gave a signal for someone to exit the cell.  For any other
> information, see the Response to Interrogatory #6 and the
> email attached to support that.

(*Id*., at 14.)

Plaintiff contends that the "it seems like" language used by Defendant is improper. (*Id.*, at 8.) Plaintiff also contends that the response to this Interrogatory is "contradictory" to the response to Interrogatory No. 20, in which Defendant indicated it "appears Plaintiff can be seen entering his cell alone." (*Id.*) The Court is sympathetic with Plaintiff's concerns regarding potentially contradictory factual responses. That stated, Defendant has responded to both Interrogatories, regardless of whether the responses are contradictory. Plaintiff is free to explore any such contradictions through deposition and/or trial testimony. This portion of Plaintiff's motion is **DENIED**.

## II.     Sanctions.

The Court is at a loss to understand why defense counsel, even after explicit guidance from the Court in its previous Order, does not understand the proper way to respond to Interrogatories served on a party. As discussed above, the Court's prior Order specifically "instructed [Defendant] to provide direct answers that reflect information not only known to him, but to which he has access." (Id., at 7 (emphasis added).) This language is unequivocal and unambiguous. Defendant's responses are in blatant disregard of this Order. The responses are riddled with qualifying language that is anything but direct – "I did not make this determination," "detectives would review," "[i]n the event," "the question would be referred," and "I do not believe this was investigated," "the best determination

that can be made," "[t]his would have been produced by the case detective," "where it seems that," etc.

Further, Defendant has frequently and improperly refused to provide information from individuals to whom he has access – for example, "Sergeant Torres would be the proper person to answer questions about what she was photographing and why," "I did not make this determination," "detectives would review," "the question would be referred," etc. As discussed above, these tactics by Defendant are improper. The Court also finds that Defendant's behavior is sanctionable.

The standard sanction when a Court grants a motion to compel is to "require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5). Plaintiff cites this language in the portion of his motion requesting sanctions. (Doc. 60, at 3-4.) Plaintiff, who is representing himself *pro se*, is not, however, entitled to an award of attorney's fees. *Cf. Coffman v. Hutchinson Comm. Coll.*, No. 17-4070-SAC-GEB, 2018 WL 994707, at *4 (D. Kan. Feb. 21, 2018) (holding that "[p]ro se litigants are not attorneys, and are generally not entitled to recover attorney fees for successful litigation."); *Robertson v. Biby*, No. 17-3068, 2017 WL 6397738, at *2 (10th Cir. Dec. 15, 2017) (noting "a pro se litigant is not eligible for a § 1988 fee

award"); ***Turman v. Tuttle***, 711 F.2d 148 (10th Cir. 1983) (finding that an inmate representing himself in a 42 U.S.C. § 1983 action was not entitled to receive attorney fees).

That stated, Defendant's behavior did not merely necessitate a successful motion to compel. As discussed frequently herein, Defendant also acted in direct contravention of this Court's prior Order relating to the discovery at issue. When a party fails to comply with a court's Order to provide or permit discovery, the court may issue "just orders," including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2).

As such, Plaintiff's request for sanctions is **taken under advisement** while the Court continues to supervise discovery in this case. In so doing, the Court will consider whether Defendant's supplemental discovery responses were in contempt of the Court's prior Order (Doc. 49-1) pursuant to Rule 37(b)(2).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 60) is **GRANTED in part** and **DENIED in part** as more fully set forth above and that Plaintiff's request for sanctions is **taken under advisement**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 62) is **DENIED**.

IT IS SO ORDERED.

Dated this 11th day of April, 2019, at Wichita, Kansas.

s/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE